1  LyLy Nguyen, SBN 53154
   **Law Offices of LyLy Nguyen**
2  114 E. Chance A La Mer SE, Suite 100
   Mailing address:
3  P.O. Box 482
   Ocean Shores, WA 98569
4  Tel: (360) 633-8880
   Fax: (714) 388-3890
5  lyly@lylylaw.com

6  Scott Wellman, (PRO HAC VICE)
   Chris Wellman (PRO HAC VICE)
7  **WELLMAN & WARREN LLP**
   24411 Ridge Route, Suite 200
8  Laguna Hills, CA 92653
   Tel: (949) 580-3737
9  Fax: (949) 580-3738
   swellman@w-wlaw.com
10 cwellman@w-wlaw.com

11

12 Attorneys for Petitioner,
   David W. Bathke

13

## UNITED STATES DISTRICT COURT

14

## WESTERN DISTRICT OF WASHINGTON

15

| | |
|---|---|
| 16  David W. Bathke, | CASE NO.: |
| 17             Plaintiff, | **COMPLAINT FOR** |
| 18  vs. | 1. **BREACH OF CONTRACT**<br>2. **VIOLATION OF 42USC §1983 (FAILURE TO PROVIDE DUE PROCESS)** |
| 19  City of Ocean Shores, Crystal Dingler | 3. **VIOLATION OF 42USC δ1983(NAME CLEARING)** |
| 20             Defendants. | 4. **RETALIATION**<br>5. **PROMISSORY FRAUD**<br>6. **NEGLIGENT MISPRESENTATION** |
| 21 | |
| 22 | |
| 23 | **JURY TRIAL DEMANDED** |
| 24 | |

25

26

27     Plaintiff, David W. Bathke ("Bathke"), hereby alleges as follows:

28

**PARTIES**

1. Plaintiff, David W. Bathke ("Bathke"), is an individual residing in the City of Ocean Shores, State of Washington.

2. Defendant, City of Ocean Shores (the "City"), is an incorporated municipality under the laws of the State of Washington and located in the State of Washington.

3. Defendant, Crystal Dingler ("Dingler" or the "Mayor"), is an individual residing in the City of Ocean Shores, State of Washington. At all times relevant herein, Dingler served as Mayor of the City.

**JURISDICTION AND VENUE**

4. Subject matter jurisdiction of this matter is based on 28 U.S.C. §1331 in that violation of a 42 U.S.C. §1983 raises a federal question. This court has jurisdiction over the other claims for relief pursuant to its pendent and supplementary jurisdiction power.

5. Venue is proper in this court as the actions upon which this action is based occurred within this judicial district and both defendants are located within this judicial district.

**FACTS**

6. From June 8, 2017, until he was terminated by Dingler on March 25, 2019, Bathke served as the fire chief of the City's fire department ("Chief Bathke").

7. Chief Bathke's employment with the City is governed by the City's Exempt Employee Agreement (The "Agreement"). Section 3 of the Agreement governs the termination of an employee, such as Chief Bathke, and states as follows:

> "This Agreement shall continue until modified or terminated as set forth below. During the said period, and during any extensions thereafter, Employees' employment shall not be terminated by the City except for "cause"', with the

grounds therefor to be the same as those applicable to the City's union-represented employees, including provision relating to any reduction-in-force."

8. That is, Chief Bathke is not an at-will employee but can only be terminated for proper cause, and the grounds for the proper cause are the same applicable to the City's union employees.

9. The Agreement also provides in Section 9 that any party may demand arbitration concerning any alleged breach of the Agreement pursuant to the then-existing rules of the American Arbitration Association, as long as the demand is made within ninety (90) days of the breach of the Agreement. This arbitration provision uses the word "may" and so gives a party discretionary power to demand arbitration but is not a mandatory arbitration provision.  It is Chief Bathke's desire to adjudicate this dispute through the courts and to exercise his right to trial by jury. Chief Bathke also believes that the arbitration provision is unenforceable. However, because of the short time period provided in the arbitration provision, and in order to preserve his rights, Chief Bathke has made a demand for arbitration. This demand specifically requests that the arbitration be stayed pending a decision, if necessary, of whether the arbitration is mandatory under the provision.

10. When Chief Bathke was hired he was told that the City had been without a Fire Chief for some time, that the union employees were running amok and needed to be controlled. Among other things, the employees were abusing the overtime budget and costing the City unneeded expense. Bathke was told that he needed to be a strong leader, ensure that the rank and file firefighter operate in accordance with city rules, established directives, and to reduce the out of control overtime pay.  This was specifically told to him by Dingler on April 19, 2017 during pre-hiring meets that the City held with Bathke.

11. Indeed, before formally hiring Bathke, the City contracted with him as an independent contract to consult with the City on how to reign in the chaotic conduct of the rank and file, unionized members of the City's fire department which included not only abusing the City's overtime rules, but also engaging in unsafe practices which could subject the City to liability.

12. This contracting period lasted from May 2, 2017 to June 8, 2017 at which time, Chief Bathke was hired as the fire chief of the City.

13. At the time that Chief Bathke was being lured by the City to be its fire chief, he was a finalist for other lucrative opportunities to serve as fire chief and a position in management, but based on the representations of the City's Mayor that they sorely needed his type of direction and leadership, Chief Bathke gave up his other lucrative opportunity and went to work for the City.

14. Chief Bathke did exactly what he was directed to do by the City.  This, obviously, upset the unionized firefighters as, for the first time in a long time, they were forced to account for their actions, to meet the requirements of industry standard safety practices, to comply with city policies, to follow established union contractual language, and to control their abuse of overtime.  Chief Bathke was commended on numerous occasions for his sound leadership and direction over the fire department both in private and publicly by the Mayor, City Council members, and city residents.

15. Suddenly, with no notice whatsoever, on December 14, 2018, Chief Bathke was handed a letter from the City's Mayor stating that he was being put on paid administrative leave because the union had taken a vote of no-confidence regarding him. At the same time, Chief Bathke was escorted by the City's police force off the City's premises.

16. As stated above, this letter was presented to Chief Bathke without any notice whatsoever. At no time prior to receiving this letter was Chief Bathke ever notified that he had engaged in any wrongdoing, in any activity that was even questionable, or that his leadership was subject of any concern.   To the contrary, Chief Bathke's office is located right next to the Mayor's office and they share a common door with a half-door size glass window.   This resulted in frequent encounters with the Mayor, and he was under the belief that he was implementing her instructions and she was very happy with his work. The only evaluation from Dingler was upon completion of six-month probationary period, on November 12, 2017.  At that time, Dingler stated in a letter to Chief Bathke, "I am impressed with your leadership and style, and look forward to a long career for you here in Ocean Shores. In short, the December 14, 2018 letter placing Chief Bathke on administrative leave came as a complete shock to Chief Bathke.

17. The City follows a progressive, corrective, and lawful approach to firing its employees. This policy is, in fact, published in the City guidelines.  Pursuant to this approach, the City employee is supposed to receive notice of any alleged improper conduct.  Once the notice is given, then the City and the employee are to consult with each other to agree on parameters to correct the problem.  If this does not work, then the City is to provide an additional notice to the employee and may put the employee on suspension status. Again, during this time the City and the employee are supposed to try and work out the situation by implementing safeguards or changes to correct the complained of conduct. If and only if this progressive, corrective process does not result in resolution, can the City terminate the employee.

18. This progressive, correct, and lawful approached was not followed with respect to Chief Bathke. Moreover, Chief Bathke was never afforded any notice of any problems or issues

with his conduct.  To the contrary, he was constantly complimented on how he had

handled the problems facing the fire department at the City.  Chief Bathke was never given

any chance to consult with the City to correct any perceived problem.  The City violated its

own policies in terminating Chief Bathke.

19.   On January 16, 2019, the Mayor sent Chief Bathke a letter which stated that she spoke

with several members of the union and retained an outside investigator to conduct a review

and investigation of the climate and work atmosphere of the fire department. The Mayor

stated in her letter that Chief Bathke had lost the respect of union employees of the fire

department and that she did not see a path for Chief Bathke to continue as Fire Chief and

requested that Chief Bathke resign with four months of salary as severance pay. The letter

from Dingler on January 16, 2019 included a Separation Agreement and General Release

dated February 8, 2019 and a Letter of Resignation addressed to Dingler dated February 8,

2019.

20. That is, Mayor Dingler's statement that she had hired an investigator to review Chief

Bathke's conduct was merely pretextual, as she had already decided to terminate him as

evidenced by, among other things, the fact that she stated there was no path forward for

him and provided a Separation Agreement.  In short, the City took disciplinary action and

terminated Chief Bathke without providing Chief Bathke with a notice of the reasons for

the termination and without any explanation. If Chief Bathke did not resign, he would be

placed on unpaid leave and the Mayor would move forward with separation. Chief Bathke

was left in the dark about the reasons for the union no confidence vote and had no idea

what conduct could possibly result in discipline against him.  Neither the Mayor nor the

outside investigator ever spoke to Chief Bathke during this so-called investigation, nor was

any report ever provided to Chief Bathke.

21. On February 13, 2019, the Mayor sent to Chief Bathke a letter entitled "Notice of Pre-Disciplinary Hearing." This letter made several allegations against Chief Bathke which the Mayor stated were a "Summary of Charges" which, if true, would lead to his termination.

22. At the same time, the City informed Chief Bathke that he would now be put on unpaid administrative leave (instead of paid leave), thus taking away his means of livelihood and support.

23. The allegations in the Pre-Disciplinary letter were pretextual. They are either completely false, or if there is some truth to them, they are so minor that they cannot possibly amount to the level of a "for cause" termination.

24. What is clear is that the so-called charges are a pretext for the real reason why the City is taking action against Chief Bathke which is to placate the union employees as they have complained about the measures and discipline implemented by Chief Bathke to do his job-- the very job that he was instructed to do by the Mayor and the City. Indeed, the City demanded that Chief Bathke reel in the out-of-control rank and file firefighters to ensure that they were operating pursuant to established and proper policies, and without abusing overtime and other City benefits. And after the Chief accomplished this (and was commended for doing so) the City simply "threw him under the bus."

25. On March 12, 2019 the so-called pre-disciplinary hearing was held at the City's offices. When it was discovered that the Mayor was serving as the investigator, the prosecutor, judge, and executioner, Chief Bathke, through his counsel, objected and demanded that an independent adjudicator be appointed. This objection was overruled by the Mayor.

26. Chief Bathke pointed out to the Mayor that she was an important witness in his action, as his actions had always been taken as directed by her after consultation with her. He pointed

out to the Mayor that she had a conflict of interest in acting as the investigator, prosecutor, and the decision maker, so that she should recuse herself in favor of an independent hearing officer. Chief Bathke pointed out that this violated his due process rights. Despite Chief Bathke's objections, Mayor Dingler refused to recuse herself.

27. During the hearing, Chief Bathke methodically addressed each and every allegation presented in the Mayor's pre-disciplinary letter and produced irrefutable evidence that the allegations of the City were false and trumped up apparently by the union employees.

28. Several examples are illustrative. One of the allegations was that Chief Bathke failed to show up at a fatality fire that had occurred in the City. In response to this, Chief Bathke presented photographs that he had personally taken showing that he was in fact present. Another allegation was that Chief Bathke had purchased substandard "bunker gear." In response, Chief Bathke produced records that the gear met or exceeded all National Fire Protection Association guidelines and came with a 10-year warranty. In addition, he produced a letter from the world renown manufacturer of the gear attesting to the high quality of the gear. A third allegation was that Chief Bathke was not present at a tsunami warning. In response, Chief Bathke produced emails, charts, and other records to show that in fact, he was present, and he was the incident commander of the City's emergency operation center during this tsunami warning event.

29. As Chief Bathke meticulously went through the pretextual charges it became abundantly clear that the only reason he was being terminated was because the union employees did not want to follow the procedures and supervision he had implemented.

30. Notwithstanding the fact that Chief Bathke meticulously disproved each of the charges alleged, on March 22, 2019, the Mayor sent Chief Bathke a letter informing him that the City was terminating him as of March 25, 2019.

31. In short, the only reason Chief Bathke was fired with no notice whatsoever, or with any ability to cure or resolve the situation, was because the employees over whom he supervised complained about having to follow the department rules and safety procedures in accordance with city policies and industry standards. This termination does not meet the requirement of for "cause."

32. The City has refused to provide any post termination hearing with a hearing officer that is unbiased and independent that can quickly, within the requirements of due process, determine whether the termination of Chief Bathke was justified.  Because of this, Chief Bathke's property right in his job and pay has been summarily taken away from him with no proper or speedy remedy.

## FIRST CLAIM FOR RELIEF

## (BREACH OF CONTRACT)

33. Bathke incorporates each of the allegations above as if they are set out hereat.

34. The Agreement requires that Chief Bathke's employment with the City can only be terminated "for "cause" with the grounds therefor to be the same as those applicable to the City's union-represented employees."

35. The City has breached the Agreement by terminating Chief Bathke's employment without proper cause.

36. As a result of this breach of the Agreement, Chief Bathke has been damaged in an amount to be determined at trial.  At this time, the estimate of damages exceeds $1,400,000.

## SECOND CLAIM FOR RELIEF

## (VIOLATION OF 42 USC §1983-Failure to Provide Due Process)

37. Petitioner incorporates each of the allegations above as if they are set out hereat.

38. Pursuant to 42 USC §1983, any person, which includes the City and Dingler, who, under color of law of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any right, privilege or immunities secured by the Constitution and laws, shall be liable to the party injured.

39. Prior to disciplinary action or termination, due process requires proper notice and Chief Bathke must be given an explanation of the evidence and witnesses related to the potential action and an opportunity to present a response to the charges to the decision maker. Dingler disciplined Chief Bathke when she sent Chief Bathke a Separation Agreement and General Release and Resignation Letter without any explanation and Chief Bathke did not have an opportunity to respond to the charges because the charges were not provided to Chief Bathke in this letter.

40. That is, the fact that the City, through Mayor Dingler, had already decided to terminate Chief Bathke before any notice or hearing was provided, is a violation of his due process rights.

41. The due process clause of the 5th and 14th amendments requires that when an administrative hearing is required to determine whether there are proper grounds to terminate an employee protected by a contract (i.e. can only be terminated for "cause" and is not an at-will employee), then the adjudicator and the adjudication must be impartial. In short, a fair trial in a fair tribunal is a basic requirement of due process.

42. In this matter, Dingler served as the prosecutor, the judge, and the executioner. It was her who investigated and endorsed the pretextual charges against Bathke. It was her who presided over the hearing and decided all issues. And it was her who decided the punishment.

43. To make matters worse, at the hearing Bathke made it clear that Dingler was a material witness to the matter such that she had a conflict of interest. Despite this, and despite Bathke's objection to her serving as the hearing officer, Dingler overruled the objection and did so.

44. The result is that Bathke was denied a fair hearing by an impartial adjudicator. As a result, his due process rights have been violated. That is, Chief Bathke was denied, under color of law, his Constitutional rights by the City and Dingler.

45. Moreover, the City refused to provide a speedy post termination hearing with an unbiased, independent adjudicator even though it knew that Mayor Dingler was biased and not independent. Chief Bathke was never provided proper notice or the ability to be heard in front of an unbiased hearing officer.

46. Pursuant to 42 USC §1983 both Dingler and the City are liable for their wrongdoing in an amount to be determined at trial, but presently estimated at more than $1,400,000.

47. In addition, the City is liable for the attorneys fees that Chief Bathke has and will incur in this matter.

### THIRD CLAIM FOR RELIEF

### (VIOLATION OF 42 USC δ1983-NAME CLEARING)

48. Bathke incorporates each of the allegations above as if they are set out hereat.

49. In its fervor to justify its improper actions taken against Chief Bathke, the City has made public statements and innuendos both in the press and outside of the press which impugns Chief Bathke's name and reputation.

50. The result is that Chief Bathke has been unable to obtain another job.

51. On information and belief, the City carefully orchestrated a smear campaign against Chief Bathke to harm him and to justify its improper actions.

52. Such conduct is a violation of Chief Bathke's due process rights and entitles him to have his name cleared and to damages.

53. The amount of damages is presently estimated at more than $1,400,000

**54.** In addition, the City is liable is for the attorneys fees that Chief Bathke has and will incur in clearing his name.

**FOURTH CLAIM FOR RELIEF**

**(RETALIATION)**

**RCW 42.41**

55. Bathke incorporates each of the allegations above as if they are set out hereat.

56. During his tenure as fire chief, Bathke became aware that the employees of the fire department were violating established fire safety standards and implemented changes to prevent these violations.  Bathke reported these safety changes to Dingler. In order to circumvent these changes, the fire department employees conspired with Dingler to terminate Bathke. In other words, as retaliation against Bathke for his attempt to implement necessary safety procedures, the City, through Mayor Dingler, terminated Bathke. The actions by Dingler constitute an abuse of authority.

57. Bathke was instructed by the City to cut the overtime practices of the fire department employees, as this constituted a gross waste of public funds.

58. As instructed, Bathke made the necessary changes to reduce the overtime of the fire department employees, which was unpopular with the fire department employees who worked with the Mayor to have him fired, so that they would not have to abide by the changes.  In other words, the City and Dingler retaliated against Bathke as a result of him bringing to their attention (and attempting to change) practices which were resulting in a gross waste of public funds.

-12-
COMPLAINT

59. During his tenure, Bathke discovered that a firefighter had been improperly demoted in violation of the City's policies.  He brought this to the attention of the other union fire employees as well as the Mayor.  He was told that he should "leave it alone," and if he did not, then "it would not go well for him." Despite such threat, Bathke felt that he had a duty to properly follow the policies and law of the City.  He felt any other alternative would be an abuse of power.  Bathke, therefore, worked to correct the improper demotion.

60. In retaliation of Bathke's efforts, the City, through Dingler, terminated him.

61. The retaliation described in this claim for relief has resulted in damage to Bathke, the amount of which will be proven at trial. At this time, it is estimated to be in excess of $1,400,000.  In addition, Chief Bathke is entitled to attorneys fees incurred by him in this matter.

## FIFTH CLAIM FOR RELIEF

## (PROMISSORY FRAUD)

62. Bathke incorporates each of the allegations above as if they are set out hereat.

63. When Chief Bathke agreed to take the job as fire Chief of Ocean Shores he did so in reliance upon the express representation that the City required a Chief that would make demands on the rank and file firefighters in an effort to persuade them to conduct themselves according to a proper rules and policies and to cease abusing the City overtime and pay time-off benefits.

64. The City further represented that if Chief Bathke would provide such direction that he could look forward to long term employment where he would be able to retire and enjoy the retirement benefits offered by the City.

65. On November 12. 2017, Dingler stated in a letter to Chief Bathke, "I am impressed with your leadership and style, and look forward to a long career for you here in Ocean Shores'.

66. In reliance on these representations, Chief Bathke declined another opportunity to act as fire chief, relocated to Ocean Shores and became its fire chief. Chief Bathke went so far as to purchase a home in Ocean Shores which he would not have done in the absence of such representations.

67. The City never informed Chief Bathke that it never intended to keep its promise. In this regard, the City never informed Chief Bathke that if the union employees were unhappy with his direction that he would be summarily fired, without notice, and that all of his employment benefits would be lost.

68. If the City had informed him of this, then Chief Bathke would have taken other job opportunities that were available to him.

69. As a result of this misrepresentation, Chief Bathke has been damaged in an amount to be proven at trial. At this time, the estimate of damages exceeds $1,400,000.

## SIXTH CLAIM FOR RELIEF

## (NEGLIGENT MISREPRESENTATION)

70. Bathke incorporates each of the allegations above as if they are set out hereat.

71. The City was negligent in not informing Chief Bathke that it would placate the union employees at the expense of Chief Bathke.

72. If the City had informed him of this, then Chief Bathke would have taken other job opportunities that were available to him.

73. As a result of this misrepresentation, Chief Bathke has been damaged in an amount to be proven at trial. At this time, the estimate of damages exceeds $1,400,000.

///

///

///

-14-

**PRAYER FOR RELIEF:**

On each claim for relief, Petitioner, prays as follows:

1.  For Compensatory damages in an amount to be proven at trial which is presently estimated to be no less than $1,400,000.

2.  For injunctive relief tailored to clear Chief Bathke's name, and other injunctive relief as deemed appropriate by the Court.

3.  For attorneys' fees.

4.  For cost of suit herein.

5.  For prejudgment interest on the amount owed.

6.  For such further relief as deemed appropriate by the court.


DATED: April 22, 2019                          **LAW OFFICES OF LYLY NGUYEN**

                                 By: _____
                                      LYLY NGUYEN

                                      **WELLMAN & WARREN**
                                      SCOTT WELLMAN
                                      CHRIS WELLMAN
                                      ANDREW WELLMAN
                                      Attorneys for Petitioner,
                                      David W. Bathke