UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAVID W. BATHKE,<br><br>                      Plaintiff,<br>    v.<br><br>CITY OF OCEAN SHORES,<br>CRYSTAL DINGLER,<br><br>                      Defendants. | CASE NO. C19-5338 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

      This matter comes before the Court on Defendants City of Ocean Shores ("City") and Crystal Dingler's ("Dingler") (collectively "Defendants") motion for partial summary judgment and motion to compel arbitration. Dkt. 13. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On April 23, 2019, Plaintiff David Bathke ("Bathke") filed a complaint against Defendants asserting numerous claims. Dkt. 1. On May 17, 2019, Bathke filed an amended complaint asserting claims for violations of his due process rights under 42 U.S.C. § 1983 and breach of contract. Dkt. 11.

On June 28, 2019, Defendants filed the instant motion requesting summary judgment on the § 1983 claims and arbitration on the breach of contract claim. Dkt. 13. On July 19, 2019, Bathke responded. Dkt. 18. On July 26, 2019, Defendants replied and included a motion to strike.[1] Dkt. 19.

## II. FACTUAL BACKGROUND

Bathke has over 35 years of experience in firefighting and managing fire departments and has served as the fire chief of three different city fire departments. Dkt. 18-2, ¶ 2. In April of 2017, Bathke interviewed for the fire chief position with the City. *Id.* ¶ 4. After the interview, the City's mayor, Dingler, offered Bathke the position of fire chief starting in June and a temporary position as consultant until June. *Id.* ¶ 10. As part of the hiring process, Bathke and the City entered into an agreement stating that he could not be terminated except for "cause" and included an attorney's fees provision as follows:

> The City and Employees shall each be responsible for their own attorney's fees in any Court action or arbitration proceeding involving this Agreement. The City shall pay any and all costs of arbitration relating to this Agreement. The Employees or the City, pursuant to the then-existing rules of the American Arbitration Association, may demand arbitration

---

[1] The Court denies the motion to strike as moot because the document is irrelevant to the Court's analysis.

> concerning any alleged breach of this Agreement, provided the aggrieved party/ies do so within ninety (90) days of any alleged breach.

Dkt. 14-1 at 5. In November 2017, Bathke completed his probationary period, and the City converted his position to a full-time position.

In November 2018, Dingler met with the City's Human Resource Specialist Dani Smith ("Smith") regarding concerns about Bathke and the fire department. Smith informed Dingler that the union firefighters were considering a vote of "no confidence" against Bathke. Dkt. 14, ¶ 22. Dingler then spoke with one of the senior firefighters who confirmed that Bathke had lost the confidence of the department. *Id.* ¶ 23. Dingler contends that she then spoke with Bathke regarding the impending vote of "no confidence." *Id.* Bathke declares that this meeting did not happen. Dkt. 18-2, ¶ 17.

On December 13, 2018, Dingler attended a meeting with Smith and senior firefighters. Dingler declares that Fire Lieutenant Corey Kul informed her "that 100% of the union members had issued a vote of 'no confidence' concerning" Bathke. Dkt. 14, ¶ 24. Two senior firefighters

> then proceeded to describe the significant areas of concern regarding Chief Bathke's management of the department, including his disregard for and alienation of staff; his arrogant and narcissistic manner; the fact that his conduct was causing some members to seek employment with other agencies; his poor relations with Grays Harbor Emergency Management (GHEMS); and other areas of significant concern.

*Id.* On December 14, 2018, Dingler placed Bathke on administrative leave to conduct an investigation into the allegations against him. *Id.* ¶ 25. Bathke declares that the suspension "came as a complete surprise." Dkt. 18-2, ¶ 19.

After Dingler and Smith conducted an initial investigation, Dingler decided to retain the services of an outside investigator, Robin Nielsen. Dkt. 14, ¶ 27. "Based on Ms. Nielsen's initial verbal report of what she was learning from speaking with the various witnesses, [Dingler] decided to have [Nielsen] suspend her investigation." *Id.* ¶ 28. Dingler essentially concluded that it would be better for the City to "explore the possibility of negotiating a severance and separation agreement" with Bathke rather than resolve the issues leading to his suspension. *Id.*

On January 16, 2019, Dingler sent a memo to Bathke informing him of the City's offer for Bathke to resign in return for four-months' severance starting February 8, 2019. Dkt. 14-6. Dingler stated that if Bathke refused the offer, then Bathke would be placed on unpaid leave after February 8, 2019 and that she would "begin the disciplinary process which will include providing [Bathke] appropriate notice and an opportunity to be heard as to the basis for moving forward with separation." *Id.*

Bathke refused the City's offer and retained counsel. On January 23, 2019, Bathke's counsel sent a letter to Dingler officially rejecting the offer of resignation and demanding that Bathke be removed from administrative leave and returned to his position as fire chief. Dkt. 14-7. The letter contested the "cause" for termination and put the City on notice that if the City proceeded with termination, Bathke intended to pursue all available legal remedies. *Id.*

On February 13, 2019, Dingler responded. She directed Bathke to appear at a pre-termination hearing and provided a summary of charges. Dkt. 14-8. Dingler set forth six categories of charges as follows: (1) failure to establish trust and confidence among staff,

(2) poor judgment and decision-making with respect to purchases and expenditures, (3) failure to comply with policies and legal requirements in personnel matters, (4) failure to respond promptly or properly to calls, (5) disrespectful comments and behavior to and about others, and (6) dishonesty. *Id.* Dingler attached over 150 pages of documents supporting the charges. *Id.*

On March 12, 2019, the hearing was held. Bathke objected to Dingler serving as the hearing officer. Dkt. 18-2, ¶ 27. Bathke claims that Dingler overruled the objection and proceeded with the hearing. *Id.* Dingler declares that the hearing lasted over three hours and that Bathke was given a full opportunity to respond to the City's charges. Dkt. 14, ¶¶ 33–35.

On March 22, 2019, Dingler sent Bathke a letter informing him of the City's decision to terminate his employment for cause. Dkt. 14-10.

After the termination, Bathke filed this complaint and filed for arbitration. Dkt. 18-2, ¶ 31. Bathke contends that he only filed for arbitration to protect his rights under the Employee Agreement because the agreement requires an arbitration to be filed within 90 days of his termination. *Id.* ¶ 31. Bathke then requested that the arbitration be stayed until the Court determined whether the matter must be arbitrated. *Id.* ¶ 32.

Bathke also contends that several media posts have appeared after his termination. First, Bathke cites a March 13, 2019, article in the North Coast News that contains damaging allegations against Bathke. *Id.* ¶¶ 34–37. The article was based on documents provided to the paper from the City pursuant to a public records request. *Id.* ¶ 37.

Bathke declares that the article has been "picked up by numerous national and worldwide fire service media outlets and magazines." *Id.* ¶ 38.

Second, Bathke cites a City resident's Facebook post that "contained a copy of a letter from the [firefighters'] union accusing [Bathke] of being dishonest and incompetent." *Id.* ¶ 39. In the post, the resident states that he asked for the letter in November 2018, but the City only produced it in response to his recent public records request. Dkt. 18-2 at 16.

Based on these articles, Bathke alleges that the City placed this damaging material in his personnel folder sometime after it placed him on leave on December 14, 2018. *Id.* ¶ 40. Bathke also declares that he has applied for at least fifty jobs throughout the nation but has been unable to secure another position. *Id.* ¶ 41. He declares that when he is in the final interview processes, "the job prospect dissipates when it becomes clear that the employer has learned of the damning statements in the publicly disseminated information." *Id.*

## III. DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

## B. Due Process

Bathke alleges that Defendants violated his due process rights by failing to provide him with an impartial hearing before his termination and by failing to provide him with a name clearing hearing. Dkt. 14, ¶¶ 37–54. Defendants move for summary judgment on certain aspects of these claims.

### 1. Pre-termination Hearing

The Supreme Court has "held that a constitutionally adequate predeprivation hearing consist[s] of only three elements: (1) oral or written notice to the employee of the 'charges' against him; (2) an explanation of the employer's evidence; and (3) an opportunity to respond, either in person or in writing." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 986 (9th Cir. 1998) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). The pre-termination hearing "need not be a full adversarial hearing but must be preceded by adequate notice and must afford the employee a meaningful opportunity to speak in her own defense." *Matthews v. Harney Cty., Or., Sch. Dist. No. 4*, 819 F.2d 889, 892 (9th Cir. 1987).

In this case, Bathke argues that his pre-termination hearing was not meaningful because (1) the City had already decided to terminate him and (2) Dingler was not an impartial hearing officer. Dkt. 18 at 8–10. First, Bathke provides no facts to support the assertion that the City or Dingler had decided to terminate him. At most, Dingler wrote that Bathke had "lost the trust and respect of the members of [his] department," and "[w]ithout that, [Dingler did] not see a path forward for [Bathke] to continue in [his] role as Fire Chief." Dkt. 14-6. Dingler offered a "mutually agreeable separation" that she

believed was in both parties' interest, and if Bathke refused to resign, then she would "begin the disciplinary process which will include providing [Bathke] appropriate notice and an opportunity to be heard as to the basis for moving forward with separation." *Id.* At most, Dingler conveyed the idea that she was contemplating termination, which implicated Bathke's due process rights of notice and opportunity to be heard. These facts stand in stark contrast to those in *Matthews* where the Ninth Circuit held that questions of fact precluded summary judgment on whether the plaintiff's due process rights were violated.

In *Matthews*, the plaintiff school teacher attempted to cover up an incident where two students approached her regarding the possibility that they had illegal pills in their possession. 819 F.2d at 890. Although the students initially consented to the cover up, they returned to the teacher and stated that they were going to inform the superintendent about the pills. *Id.* The teacher then flushed two of the three pills down the toilet and escorted the students to the superintendent with the remaining pill. *Id.* Two days later, the superintendent called the teacher into his office and informed her that her actions would come before the school board at the next hearing, which had the authority to terminate the teacher. *Id.* Approximately two weeks later at the next scheduled board meeting, the board interviewed the teacher and the students. *Id.* at 891. The next day, without notice or an opportunity to be heard, the board presented the teacher with the opportunity to resign or be fired. *Id.* Although the teacher resigned, the next day she withdrew her resignation. *Id.* The board then directed her to appear at a meeting one week later. *Id.* At the beginning of the meeting, the board met without the teacher

present and voted to terminate her employment.  *Id.*  When they invited her into the meeting, they informed her of their decision.  *Id.*  Under these facts, the Ninth Circuit held that a reasonable jury could conclude that the teacher was not provided notice and an opportunity to be heard at either meeting of the board.  *Id.* at 893.  The first meeting did not satisfy due process because the teacher "was asked to resign before she was ever aware that her job was in jeopardy."  *Id.*  The second meeting did not satisfy due process because the teacher "was called into the meeting only after the board had already voted in favor of dismissal."  *Id.*  Bathke fails to present facts that reflect a similar situation.  Thus, the Court concludes that *Matthews* is factually distinguishable.

In fact, the *Matthews* court stated that it "read *Loudermill* to require, in advance of any pre-termination hearing (1) notice to the employee *as to the pendency or contemplation of a dismissal action*, and (2) notice as to the charges and evidence which give rise to that concern."  *Id*. at 892 (emphasis added).  This is exactly what Dingler provided in her letter to Bathke.  Dingler stated that she was contemplating termination because without the trust of the firefighters she did not see any way forward with Bathke as chief.  She, however, provided Bathke notice of a disciplinary proceeding in which he would have an opportunity to be heard.  Therefore, the Court concludes that Bathke has failed to establish that the City or Dingler violated his due process rights by informing him that it was contemplating termination.

Regarding Bathke's argument that he was entitled to a hearing officer other than Dingler, he fails to provide any authority for the proposition that the person with the authority to terminate him is precluded from presiding over a pre-termination hearing.

Defendants provide some Supreme Court dicta for the proposition that the terminated employee's supervisor is in the best position to preside over a pre-termination hearing because "the employee's supervisor is the official best informed about the 'cause' for termination." *Arnett v. Kennedy*, 416 U.S. 134, 170 n.5 (1974) (Powell, J., concurring). While this dicta is most likely true, the Court is unaware of any binding precedent to support Bathke's position. Moreover, under the facts of this case, Bathke has failed to establish that any material questions of fact exist on the issue of whether he was afforded a meaningful opportunity to be heard. At the hearing, Dingler listened to Bathke's positions for over three hours. After the hearing, Dingler provided Bathke with a detailed eight-page termination letter that cited and countered many of Bathke's arguments. Dkt. 14-10. Therefore, the Court grants Defendants' motion on Bathke's pre-termination claim because no reasonable juror could conclude that Defendants failed to provide him with the process he was due prior to his official termination.

    **2.     Name Clearing**

Bathke's third claim for relief is titled "Violation of 42 U.S.C. § 1983 – Name Clearing." Dkt. 11 at 11. In their motion, Defendants interpreted this claim as a violation of Bathke's procedural due process rights. Bathke's response, however, provides arguments and authorities based on both the procedural and substantive aspects of a due process claim when the government publishes stigmatizing information about a terminated employee. In their reply, Defendants "submit that [the substantive] claim was not properly pled . . . ." Dkt. 19 at 5. While Bathke's complaint may not sufficiently state a claim for relief for a violation of his substantive rights, he did allege that he "has

been unable to obtain another job." *Id.* ¶ 50. This is a distinct element of his substantive rights. *See, e.g.*, *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 998 (9th Cir. 2007), *aff'd*, 553 U.S. 591 (2008) ("we hold that there is substantive due process protection against government employer actions that foreclose access to a particular profession to the same degree as government regulation."). Thus, while the claim as plead may not survive a motion to dismiss, the Court rejects Defendants' contention that Bathke's complaint provided no indication that he was asserting a violation of his substantive due process rights. The Court also declines to address Defendants' argument that Bathke failed to establish the elements of this claim, Dkt. 19 at 5–6, because Defendants failed to provide Bathke notice and an opportunity to be heard by including such arguments in their motion. As such, the Court concludes that Bathke's substantive aspect remains regardless of the Court's decision on his procedural aspect.

Regarding Bathke's claim based on a failure to provide a name clearing hearing, the Supreme Court has held "that a terminated employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is publicly disclosed." *Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004) (citing *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972)). "[P]lacement of stigmatizing information in an employee's personnel file constitutes publication when the governing state law classifies an employee's personnel file as a public record." *Id.* at 1112. Defendants admit that the "City is mandated under Washington's broad Public Records Act, Chapter 42.56 RCW, to produce records in response to public records

requests when such records are responsive to a request and not otherwise exempt from disclosure." Dkt. 19 at 6.

In this case, Defendants argue that Bathke's claim fails for two reasons. First, Bathke is entitled to a post-deprivation arbitration process, which the Ninth Circuit has held is sufficient to protect an employee's rights. Dkt. 13 at 14 (citing *Mustafa v. Clark Cty. Sch. Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998)). In *Mustafa*, the plaintiff was entitled to a prompt arbitration hearing pursuant to his collective bargaining agreement. *Id.* Here, Defendants contend that arbitration with the American Arbitration Association ("AAA") is similarly sufficient. Bathke counters that AAA arbitration is neither reasonably prompt nor public. In the absence of binding authority to the contrary, the Court agrees with Bathke that an arbitration through the AAA will not satisfy the procedural due process requirements to counter publicly disclosed stigmatizing information. Therefore, the Court rejects Defendants' arguments on this issue.

Second, Defendants contend that Bathke's rights are not violated unless Defendants refuse to provide a requested public hearing. Dkt. 13 at 16. Specifically, they argue that it "is the *denial* of a name-clearing hearing that causes the deprivation of the liberty interest without due process." *Id.* (citing *Quinn v. Shirey*, 293 F.3d 315, 320–21 (6th Cir. 2002); *Baden v. Koch*, 799 F.2d 825, 830 (2d Cir. 1986); *In re Selcraig*, 705 F.2d 789, 796 (5th Cir. 1983)). While none of these authorities are binding, this proposition is overwhelming logical and reasonable, especially under the facts of this case. Both of the articles Bathke cites as containing stigmatizing content were based on information received from public records requests. Now, without any evidence that he

requested that either Dingler or the City provide a hearing to clear his name, Bathke sues Defendants asserting a violation of his due process rights. This seems unjust. *See, e.g.*, *Winskowski v. City of Stephen*, 442 F.3d 1107, 1111 (8th Cir. 2006) ("Allowing an employee to claim damages for being deprived of a hearing never requested would greatly expand government employers' potential liability and force such employers prophylactically to offer name-clearings when it is not at all clear that the employee is entitled to—or even desires—one. It would also reward employees for lying in wait and later asserting a right that the employer had no reason to suspect the employee wanted to exercise in the first place."). Therefore, the Court concludes that an essential component of Bathke's claim is a request for and denial of a public name clearing hearing after publication of stigmatizing content. Because Bathke failed to request such a hearing, the Court grants Defendants' motion on his procedural due process deprivation of liberty claim.[2]

**C.     Breach of Contract**

Defendants argue that Bathke's breach of contract claim is subject to arbitration. Dkt. 13 at 19. Bathke argues that the contract allows permissive arbitration because it uses the phrase "may compel arbitration." Dkt. 18 at 17–19. The Court agrees, and Defendants provide no argument to the contrary in their reply. Moreover, Defendants have failed to submit any evidence that it compelled arbitration within the ninety-day window. In other words, the Court rejects Defendants' request to compel arbitration

---

[2] The Court declines to address Dingler's qualified immunity argument because the § 1983 claims fail for other reasons.

under a permissive arbitration clause when Defendants failed to timely invoke that clause.[3] Therefore, the Court denies Defendants' motion on this issue.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for partial summary judgment and motion to compel arbitration, Dkt. 13, is **GRANTED in part** and **DENIED in part** as stated herein.

Dated this 4th day of October, 2019.

BENJAMIN H. SETTLE
United States District Judge

---

[3] Defendants also fail to argue detrimental reliance on Bathke's filing for arbitration.